IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD E. BLAIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-cv-0637 |
| ) | |
| MICHAEL J. ASTRUE, ) | Judge Thomas A. Wiseman, Jr. |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff Richard E. Blair's Motion for Judgment on the Administrative Record (Doc. No. 13) and supporting memorandum (Doc. No. 14) seeking judicial review of the Commissioner's denial of his claim for Social Security Disability Insurance Benefits ("DIB"). The Court withdraws the previous reference to the Magistrate Judge. For the reasons explained below, the Court finds that the ALJ's decision is supported by substantial evidence in the record, and that the ALJ applied the correct legal principles in reaching his decision. Accordingly, the Plaintiff's motion will be denied, the Commissioner's decision affirmed, and this matter dismissed.

**I.   INTRODUCTION**

The Plaintiff filed his first application for DIB on May 20, 2003, alleging that he had become disabled on April 9, 2002. (*See* Doc. No. 9, Certified Transcript of Administrative Record ("TR"), at 61-63.) Plaintiff was insured for DIB benefits through December 31, 2007. (TR 18.) His claim was denied initially by the Commissioner on August 28, 2003, and again upon reconsideration on May 5, 2004. (TR 42, 44.) He requested, and was granted, a hearing before an administrative law judge ("ALJ"). The Plaintiff then appeared, with counsel, before ALJ Mack H. Cherry on October 13, 2006. In a decision dated January 17, 2007, the ALJ denied Plaintiff's application for benefits (TR 16-30). Plaintiff thereafter filed a timely request for review by the Appeals Council, and on May 19, 2008, the Appeals Council denied Plaintiff's request for review (TR 5-7). The ALJ's decision thus became the final decision of the Commissioner, from which the Plaintiff's appeal arises pursuant to 42 U.S.C. §§ 405(g) and 13183(c)(3).

## II. THE FACTUAL RECORD

### A. Background

Plaintiff was born April 24, 1964 and was thirty-seven (a "younger individual") on his alleged onset date ("AOD") of April 9, 2002. He was forty-two (still a "younger individual") on October 13, 2006, the date of his administrative hearing. *See* 20 C.F.R. §§ 404.1563, 404.1564, and 404.1565 (classifying individuals according to their age, education and work experience). Plaintiff completed high school and lives with his wife and their minor son. (TR 29.) The Plaintiff previously worked as chief surveyor with the same company for over twenty years before the onset of his alleged disability from a work-related injury. (TR 72, 323.)

### B. The Relevant Medical History

On April 5, 2002, while surveying water lines, Plaintiff injured his back lifting a manhole cover. (TR 168.) On October 31, 2002, he received a worker's compensation settlement of $49,350.40 (after attorney's fees), distributed partially in a lump sum, and with the remainder disbursed in monthly payments. (TR 193, 166, 340.) Plaintiff was initially treated, not by Dr. Thomas Gautsch, M.D. as Plaintiff's counsel incorrectly asserts, but, instead, by chiropractor Michael Tigges, D.C., who actually referred the patient to Dr. Gautsch, orthopedic surgeon, who then ordered an MRI scan. (TR 82, 171.) Dr. Gautsch was ultimately responsible, however, for referring the Plaintiff to Dr. Jeffery E. Hazelwood, M.D., another orthopedic surgeon, in May of 2002. (TR 82, 241.)

The Plaintiff sought treatment with chiropractor Michael Tigges shortly after his injury, and continued treatment with him on roughly a monthly basis until at least August 10, 2006. (TR 211-12; 279-93; 302-10.) Dr. Tigges has repeatedly assessed the Plaintiff as being totally disabled. (*Id.*) Dr. Gautsch ordered two MRIs for the Plaintiff at Dr. Tigges' suggestion; the first in 2002, and then again in 2003. Both MRIs revealed moderate to severe central stenosis and moderate to severe neural forminal narrowing. (TR 171, 214-15.) Dr. Hazelwood treated Plaintiff from May 6, 2002 until May 19, 2006. Dr. Hazelwood's treatment notes indicate Dr. Hazelwood found the pain medications used by Plaintiff were effective in managing his pain without any side effects (TR 217-47; 276-77; 294-301; 312-14.) Plaintiff received a conservative course of treatment from Dr. Hazelwood. He has prescription for the muscle relaxant Ultracet, and also takes Aleve, an over-the-counter pain NSAID. (TR 16-30.)

### III. THE ALJ'S January 17, 2007 DECISION

Based on his review of the entire record, ALJ Mack H. Cherry made the following findings in the written opinion issued on January 17, 2007:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since April 9, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq.)

3. The claimant has a combination of impairments considered "severe," which includes lumbar degenerative disc disease with intermittent left leg numbness, recurrent right shoulder strain, and obesity (20 CFR 404.1520(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work activity which allows for lifting and/or carrying of 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6 hours in an 8 hour day; sitting of 6 hours in an 8 hour workday; a sit/stand (at will) option; occasional upper and lower extremities pushing and/or pulling; no climbing of ladders, ropes, or scaffolds; no crawling; occasional climbing stairs and ramps; occasional balancing, stooping, bending, kneeling and crouching; and the avoidance of exposure to temperature extremes, dampness, wetness, humidity, vibration, hazardous machinery, and unprotected heights.

6. The claimant is unable to perform any past relevant work (20 CFR § 404.1565).

7. The claimant was 37 years old (a younger individual age 18-44) on the alleged disability onset date (20 CFR § 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. The VE testified there are no transferable job skills

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566).

11. The claimant has not been under a "disability," as defined in Social Security Act, from April 9, 2002 through the date of this decision (CFR 404.1520(g)).

(TR 18-30.)

### IV. APPLICABLE LEGAL STANDARDS

#### A. Standard of Review

Under the Social Security Act (the "Act"), the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Act provides that the "findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This Court, therefore, is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). If substantial evidence supports the ALJ's conclusion and the ALJ applied the correct legal standards, this Court cannot reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion. *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995). Conversely, however, the Court must reverse and remand for further findings if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different. *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545, 546 (6th Cir. 2004). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based on the record taken as a whole. *See Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984). When there has been a misapplication of the regulations or when there is not substantial evidence to support one of the ALJ's factual findings, the appropriate remedy is generally remand under sentence four of 42 U.S.C. § 405(g) for further consideration. *See Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

      **B.**     **Evaluation of Entitlement to Social Security Benefits**

Under the Act, a claimant is entitled to receive benefits only if he is deemed "disabled." 42 U.S.C. § 423(d)(1)(A). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability means a claimant, in light of his "age, education, and work experience," would be unable to "engage in any other kind of substantial work which exists in the economy." 42 U.S.C. § 423(d)(2)(A).

In applying the standards for determining disability, the Commissioner has promulgated regulations setting forth a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 and 406.920. An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. *See id.* The Sixth Circuit has summarized the five-steps of the sequential

evaluation process as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); 20 C.F.R. § 404.1520(b)-(f). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at step five to show that alternative jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**V.  ANALYSIS AND DISCUSSION**

Plaintiff presents the following issues for review:

> 1.  Whether the ALJ erred by not giving proper deference to the opinions of Mr. Blair's treating physicians;
>
> 2.  Whether the ALJ failed to properly evaluate Plaintiff's credibility;

(Pl.'s Brief, at 7.)

As set forth above, the question for this Court is whether substantial evidence supports the ALJ's findings and whether he applied the correct legal standards. *Abbott*, 905 F.2d at 922. Because of the relatively focused nature of the Plaintiff's arguments, the Court does not find it necessary to provide an exhaustive factual account of the Plaintiff's medical history.

**A.  Whether the ALJ Erred By Not Giving Proper Deference to the Opinions of the Plaintiff's Treating Physicians.**

The Sixth Circuit has observed that even where the Commissioner's decision to reject a claimant's disability application is otherwise supported by substantial evidence, reversal will nonetheless be required if the agency fails to follow its own procedural regulation requiring the agency to " 'give good

reasons' for not giving weight to a treating physician in the context of a disability determination." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. *Strunk v. Astrue*, No. 08-201-GWU, 2009 U.S. Dist. LEXIS 33986 (E.D. Ky. Apr. 22, 2009) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922 (6th Cir. 1987)).

An ALJ generally is required give more weight to opinions from treating sources since "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Further, an ALJ must give the opinion of a treating source controlling weight if he finds the opinion to be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Miksell v. Comm'r of Soc. Sec.*, No. 388, 2008 U.S. Dist. LEXIS 12913, at *21 (S.D. Ohio, June 12, 2008) (citing *Harris*, 756 F.2d at 435)).

If the opinion of a treating source is not accorded controlling weight, an ALJ must consider such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion. *Harris, 756 F.2d at 431-35.*

The regulation also requires the agency to always "give good reasons" in the ALJ's decision for the weight given the treating source's opinion." *Id.* "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that her physician has deemed him disabled and therefore "might be especially bewildered when told by an

administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating-physician rule and permits meaningful review of the ALJ's application of the rule. *Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004). In addition, the Commissioner interprets 20 C.F.R. §§ 404.1527(f) and 416.927(f) as requiring ALJs to consider opinions of agency consultants "as opinions of nonexamining physicians and psychologists." SSR 96-6p. ALJs aren't "bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.*

Plaintiff argues that the opinions of Drs. Gautsch, Hazelwood, and Tigges are entitled to greater weight as medical source evidence, and that the ALJ failed to give good reason for rejecting their opinions (Pl.'s Brief, at 7-10). As explained below, the Court nonetheless finds that the ALJ did not err in his treatment of these medical source opinions because the record reflects that the ALJ actually considered the medical opinions of Drs. Gautsch, Hazelwood, and Tigges and gave good reasons for not according them complete deference.

First, regarding Dr. Gautsch, the ALJ explained the reasons for his departure from the normal deference accorded a treating physician's opinion. (TR 19.) Specifically, the ALJ found that Dr. Gautsch's contemporaneous opinion that Plaintiff was able to sit, stand, or walk for eight hours, his finding that the pain was "mostly resolved," along with the conservative nature of the treatment plan, were inconsistent with his assessment of the 2002 MRI scan as "very impressive." (TR 171-73.) As the ALJ noted, the MRI scans did not conclusively establish that a herniation or disc rupture was present; further, as the Commissioner explains, "bulges and protrusions can appear on the MRI scans of healthy, asymptomatic individuals." (Def.'s Brief, at 7 (citing, Mauren Jensen, et al., *Magnetic Resonance Imaging of the Lumbar Spine in People Without Back Pain*, THE NEW ENGLAND JOURNAL OF MEDICINE, Vol. 331: 69-73. (July 14, 1994).)

Second, the ALJ correctly noted that Dr. Hazelwood opined, *for purposes of treatment*, that: (1) Plaintiff was eligible for work in the "medium" DOT category in **2002**; (2) Plaintiff experienced only mild pain in **2003**; (3) there was no evidence of radiculopathy or an antalgic gait in **2004**; (4) Plaintiff was experiencing "no significant" back pain or spasms as of **2005**; (5) Plaintiff reported experiencing pain of 3

out of 10 in **December, 2005**; and (6) Plaintiff reported that Ultracet and Aleve were effective in managing his pain (4 out of 10), without side effects, in **2006**. (TR 222, 227, 242-43, 276, 298, 312-14.) Dr. Hazelwood, however, in a December 2005 report *prepared for litigation*, inconsistently opined that Plaintiff would be required to take ten-minute rests every thirty minutes during an eight-hour workday, had an antalgic gait with radiculopathy, and would frequently be absent from any full-time work (at least three days per month). (TR 294-95.) The ALJ, therefore, did not err in rejecting the 2005 report, reasonably finding that it was not supported by the evidence and was inconsistent with the record as a whole, including Dr. Hazelwood's own treatment records. (TR 26-27, citing 294-95, 312.)

Third, though the ALJ was incorrect when he dismissed outright the medical opinion of a chiropractor as an improper source (CFR 404.1513), he made an alternative finding that Dr. Tigges' opinions that Plaintiff was totally disabled and was unable to sit or stand for more than one hour in an eight-hour day were conclusory in nature, inconsistent with his "monthly" conservative treatment plan, inconsistent with the medical record as whole, were not based on objective medical evidence, and were therefore entitled to less weight. This alternative assessment is supported by substantial evidence in the record and will not be disturbed by this Court. (TR 27-28, citing 281, 302-310.)

Finally, two state agency physicians opined that Plaintiff was capable of sitting for a total of about six hours of an eight-hour work day (TR 26, citing TR 203, 267); such an assessment is even more restrictive than that of Plaintiff's own treating physician, Dr. Gautsch, who found Plaintiff capable of sitting eight hours in an eight-hour day (TR 172). The consultants' opinions were properly considered by the ALJ in concert with the opinions of Plaintiff's treating physicians. Accordingly, this Court finds that the ALJ's decision not to accord the opinions of Drs. Gautsch, Hazelwood, and Tigges complete deference was not reversible error. Furthermore, as required by *Wilson*, the ALJ fulfilled his duty to provide Plaintiff with an adequate explanation as to why he did not accept his treating physician's disability determination, the relative weight which he did accord each opinion, and his reasons for doing so.

### B. Whether the ALJ Failed to Properly Evaluate Plaintiff's Credibility

SSR 96-7p provides instruction on evaluating a claimant's credibility as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to

> which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

In addition, 20 C.F.R. § 404.1529(c) describes the kinds of evidence that the ALJ is to consider, besides the objective medical evidence, when assessing the credibility of an individual's statements, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. A claimant's credibility is a significant consideration in the evaluation of pain. *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, an ALJ may distrust a claimant's allegations of disabling symptomatology where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997).

In his written decision, consistent with both SSR 96-7p and the above-listed factors from 20 C.F.R. § 404.1529(c), the ALJ, in considering the entirety of the record, determined that Plaintiff's complaints of pain were inconsistent[1] with the objective medical evidence, the medication and conservative treatment prescribed, and Plaintiff's range of daily activities. (TR 19-25.) Belying his complaints of severe, disabling, pain, the ALJ noted that the Plaintiff only uses muscle relaxers (though not even every night) and over-the-counter Aleve, and has appeared to be satisfied with the management of his pain on these medications. (TR 21, 222, 320-56.) Furthermore, Plaintiff's activities, including driving, shopping, visiting, walking, doing crossword puzzles, cooking, light household chores—such as sweeping and cutting grass—as well as hunting and fishing, reasonably indicated to the ALJ that the Plaintiff was not totally disabled. (TR 320-56.) Plaintiff obviously disagrees with the ALJ's discounting of his credibility, but it is nonetheless clear that the ALJ stated sufficient reasons for his credibility determination with regard to Plaintiff's degree of pain and his residual functional capability. Accordingly, the Court declines to disturb the ALJ's credibility findings.

---

[1] The extent of Plaintiff's willingness to work is demonstrated by his own admission that "I know I couldn't have a job inside. . . .That would drive me crazy," and by his refusal to consider surgery, which he concedes would help with the pain, because it would not "benefit [him] 100%." (TR 334, 341-42.)

**VI. CONCLUSION**

For the reasons discussed above, the Court finds that the ALJ applied the appropriate legal standards in reaching his conclusion, and that his decision is supported by substantial evidence in the record. An appropriate order denying Plaintiff's motion for judgment and affirming the Commissioner's decision will be entered.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge